UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| FELICITA CLAUDIO, | CASE NO. 1:19CV00383 |
| Plaintiff, | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | |
| ANDREW M. SAUL[1], COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Plaintiff Felicita Claudio ("Plaintiff") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant") denying her application for supplemental security income ("SSI"). ECF Dkt. #1. In her brief on the merits, filed on June 27, 2019, Plaintiff asserts that the administrative law judge's ("ALJ") decision is not supported by substantial evidence. ECF Dkt. #13. For the following reasons, the Court REVERSES the ALJ's decision and REMANDS this case to a new ALJ (1) to properly resolve the conflict in the opinion of Dr. Vassilopoulos and (2) for reevaluation of the third-party statements made by Plaintiff's family members.

## I. PROCEDURAL HISTORY

On October 25, 2013, Plaintiff filed a Title II application for a period of disability and disability insurance benefits ("DIB") as well as a Title XVI application for SSI. ECF Dkt. #10 ("Tr.")[2] at 12, 390, 394. In her applications, Plaintiff alleged disability beginning October 1, 2008 due to: bi-polar disorder; post-traumatic stress disorder ("PTSD"); anxiety; thyroid issues; asthma; hepatitis C, arthritis, and severe depression. *Id.* at 14, 125, 139, 390, 394. Plaintiff's

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, replacing acting Commissioner Nancy A. Berryhill. *See* Fed. R. Civ. P 25(d).

[2] All citations to the transcript refer to the page numbers assigned when the transcript was compiled (located on the bottom right corner of each page) rather than the page numbers assigned when the transcript was filed in the CM/ECF system ("PageID #").

1

applications were denied initially on March 24, 2014 and upon reconsideration on September 26, 2014. *Id.* at 12, 153-54, 186-87.

On November 5, 2014, Plaintiff requested an administrative hearing. Tr. at 12, 252. On June 13, 2016, a hearing was held before an ALJ in which Plaintiff, with counsel present, and a vocational expert ("VE") testified. *Id.* at 12, 53, 313. During this hearing, Plaintiff amended the alleged disability onset date to October 25, 2013, which was her application date. She acknowledged that she was effectively withdrawing her Title II DIB claim, leaving only her SSI claim remaining. *Id.* at 85-86, 205.

The ALJ issued his initial decision on July 25, 2016, finding Plaintiff not disabled and denying her application for SSI. Tr. at 202-18. He also dismissed Plaintiff's claims for a period of disability and DIB due to her amendment of the alleged onset date of disability and effective withdrawal of those claims. *Id.* at 85-86, 205. Plaintiff requested a review of the hearing decision, and on October 11, 2017, the Appeals Council granted review under the error of law provision. *Id.* at 225-28 (citing 20 C.F.R. § 416.1470), 338. The Appeals Council vacated and remanded for resolution of the following issue:

> In evaluating the residual functional capacity["RFC"], the [ALJ] considered the opinion of psychological consultative examiner, Charles Vassilopoulos, Ph.D., as an objective third party that evaluated the claimant, noting the [RFC] is generally consistent with his opinion. As noted in the decision, Dr. Vassilopoulos opined that the claimant had no impairment for complex instructions or making work-related judgments, mild impairment in interacting with the public, supervisors and coworkers, moderate impairment in responding appropriately to usual work situations and changes in a routine setting, as well as moderate problems with communication. However, the Council notes that at least part of Dr. Vassilopoulos' report does not pertain to the claimant. Specifically, the last page of the consultative report indicates the claimant had Multiple Sclerosis and APAB, a blood-clotting disorder, and discusses cognitive deficits associated with these impairments. Further, Dr. Vassilopoulos' report includes diagnoses of Dementia due to Multiple Sclerosis and/or Anti-Phospholipid Anti-Body Syndrome with Behavioral Disturbance. However, the claimant did not allege Multiple Sclerosis or APAB, nor does the medical evidence of record support such diagnoses . Social Security Ruling 96-8p states that in assessing the [RFC], the adjudicator must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. In the present case, the discrepancies within the consultative examination report were not addressed, and therefore any reliance upon or consideration of this opinion reflects an error of law. Therefore, further evaluation of Dr. Vassilopoulos' opinion, including resolution of the apparent inconsistency, is necessary.

Tr. at 227-28 (internal citations omitted). Further, the Appeals Council ordered the ALJ, upon remand, to do the following:

> If warranted, obtain additional evidence concerning the claimant's severe medically determinable impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 416.912).
>
> Give further consideration to the claimant's maximum [RFC] during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the non-treating source opinion pursuant to the provisions of 20 CFR 416.927, and explain the weight given to such opinion evidence. As appropriate, the [ALJ] may request the non-treating source to provide additional evidence and/or further clarification of the opinion and medical source statements about what the claimant can still do despite the impairments (20 CFR 416.912).
>
> ...

Tr. at 228.

Subsequently, the same ALJ held another hearing on February 28, 2018 in which Plaintiff, with counsel present, and a VE testified. Tr. at 12, 88. As before, Plaintiff agreed to amend her alleged disability onset date to October 25, 2013, effectively leaving only her SSI claim remaining. *Id.* at 13, 94. On April 20, 2018, the ALJ issued his decision, finding Plaintiff not disabled and denying her application for SSI. *Id.* at 9-26. Plaintiff requested a review of the hearing decision, and on January 28, 2019, the Appeals Council denied review. *Id.* at 1-5, 388.

On February 21, 2019, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. The parties consented to the jurisdiction of the undersigned. ECF Dkt. #12. On June 27, 2019, Plaintiff filed a merits brief, and Defendant filed a merits brief on September 11, 2019. ECF Dkt. #s 13, 16. Plaintiff filed a reply brief on October 9, 2019. ECF Dkt. #18.

## II. RELEVANT PORTIONS OF THE ALJ'S DECISION

On April 20, 2018, the ALJ issued his decision finding that Plaintiff was not disabled. Tr. at 9-26. The ALJ stated that Plaintiff had not engaged in substantial gainful activity since October 25, 2013, the application date (and amended disability onset date). *Id.* at 15. Continuing, the ALJ determined that Plaintiff had the following severe impairments: bipolar disorder; depression disorder; anxiety disorder; PTSD; asthma; osteoartritis of the lumbar spine; gastritis; obesity; and drug/substance addiction disorders. *Id.* (citing 20 C.F.R. § 416.920(c)). The ALJ then indicated

3

that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 16 (citing 20 C.F.R. §§ 416.920(d), 416.925, & 416.926).

After considering the record, the ALJ found that Plaintiff had the RFC to perform medium work, as defined in 20 C.F.R. § 416.967(c), except for the following limitations: can never climb ladders, ropes, or scaffolds; frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never be exposed to unprotected heights, moving mechanical parts, or operate a motor vehicle; frequently be exposed to humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold and extreme heat; limited to performing simple, routine, and repetitive tasks, but not at a production rate pace (i.e. assembly line work); limited to simple work related decisions in using her judgment and dealing with changes in the work setting; and able to frequently interact with supervisors, occasionally interact with coworkers, and never interact with the public. Tr. at 18.

The ALJ then stated that Plaintiff is unable to perform any past relevant work. Tr. at 24 (citing 20 C.F.R. § 416.965). He further found that Plaintiff was an individual closely approaching advanced age on the date the application was filed, has a limited education, and is able to communicate in English. *Id.* at 24. The ALJ noted that transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable job skills. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff can perform. *Id.* Ultimately, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, since October 25, 2013, the date the application was filed. *Id.* at 25.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to Social Security benefits. These steps are:

4

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The plaintiff has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence

is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) ("[W]hatever the meaning of 'substantial' [is] in other contexts, the threshold for such evidentiary sufficiency is not high."). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 937 (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009)) (internal citations omitted). Therefore, even if an ALJ's decision is supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a plaintiff on the merits or deprives the plaintiff of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. LAW AND ANALYSIS

Plaintiff presents several challenges to the ALJ's decision of April 20, 2018. ECF Dkt. #13. Specifically, Plaintiff alleges that the ALJ's decision is not supported by substantial evidence because: (1) he failed to resolve the conflicts in the evidence regarding Dr. Vassilopoulos' report; (2) he improperly relied, in part, on Dr. Leveille's opinion; (3) he improperly discredited witness statements from Elizabeth Robles and Arthur Summers; and (4) the GAF scores, taken as a whole, support a finding of disability. *Id.* at 18-22. For the following reasons, the Court finds that Plaintiff's contentions for issues two and four are without merit, but the ALJ committed reversible error on issues one and three.

### A. CONFLICTING REPORT

Dr. Vassilopoulos conducted a psychological evaluation of Plaintiff on September 16, 2014 at the request of Social Security. *See* tr. at 732-44. On the last page of the evaluation, he

6

diagnosed Plaintiff with Multiple Sclerosis ("MS") and/or Anti-Phospholipid Anti-Body Syndrome ("APAB") with Behavioral Disturbances. *Id.* at 743. However, as the Appeals Council originally noted, Plaintiff does not allege nor does the evidence support such impairments. *Id.* at 227-28. As stated by the Appeals Council, SSR 96-8p states that in assessing the RFC, the adjudicator must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. *Id.* at 227 (citing SSR 96-8p, 1996 WL 374184, at *7). The Appeals Council noted that at least part of Dr. Vassilopoulos' report pertained to another individual, and it remanded the case because the ALJ did not address the discrepancies, which was an error of law. *Id.*; *see supra* Section I, pp. 2-3. The Appeals Council required further evaluation of Dr. Vassilopoulos' opinion, including resolution of the apparent inconsistency. *Id.* at 228.

Plaintiff asserts that the ALJ failed to properly explain how he resolved the conflict in Dr. Vassilopoulos' report and failed to obtain clarification from the doctor. ECF Dkt. #13 at 18-20; #18 at 2-3. Upon remand from the Appeals Council, the ALJ issued his second decision on April 20, 2018, wherein he first set forth Dr. Vassilopoulos' opinion which was stated on the last page of his report. Tr. at 22, 743. The ALJ noted that Dr. Vassilopoulos' assessment was conducted in September 2014 and that Plaintiff has had further treatment indicating more restrictions in tasks and work-related judgment. *Id.* at 22. He further summarized the opinion as reflecting some impairment in judgment, insight, and impulse control, while finding that it was generally consistent with his RFC determination because Dr. Vassilopoulos: (1) limited Plaintiff's interactions with others particularly by restricting her from interaction with the public and (2) limited her to work that is routine and repetitive with no production quotas and only simple decisions when dealing with changes in the work-setting. *Id.*

Subsequently, the ALJ noted that part of Dr. Vassilopoulos' report did not pertain to Plaintiff. Tr. at 22. The ALJ specifically referenced the last page of Dr. Vassilopoulos' report which indicated that Plaintiff claimed to have MS and APAB, a blood clotting disorder, and cognitive deficits associated with such impairments. *Id.* The ALJ also noted that the report included diagnoses of Dementia due to MS and/or APAB. *Id.* at 22-23 (citing tr. at 732-44).

7

Finally, the ALJ, like the Appeals Council, acknowledged that Plaintiff did not allege MS or APAB and the medical evidence of record did not support such diagnoses. *Id.* at 23, 227. The ALJ gave no weight to this portion of Dr. Vassilopoulos' opinion. *Id.* at 23. He stated that even if Dr. Vassilopoulos took into account these additional impairments in providing his opinion, his opinion remained less restrictive than the ALJ's RFC determination. *Id.*

The Court notes that the ALJ did not expressly state how much weight he gave to the portion of Dr. Vassilopoulos' opinion containing his prognosis. *See* tr. at 22, 743. However, the ALJ continuously relies on this report throughout his decision. *See* tr. at 17, 19, 22-23 (citing to Exhibit B9F, tr. at 732-44). Both the faulty information and the prognosis relied upon are contained on the same last page of Dr. Vassilopoulos' report. *Id.* at 743. In addition, following his prognosis, Dr. Vassilopoulos lists his diagnoses of Plaintiff, including the incorrect diagnoses of Dementia, MS, and APAB. *Id.* A concerning fact is that Dr. Vassilopoulos' prognosis, which the ALJ relied upon, is sandwiched in between clearly incorrect information that did not pertain to Plaintiff. *Id.* Even the agreed-upon erroneous section on the last page of the report refers to Plaintiff by name, creating further ambiguity. *See* tr. at 743 ("Ms. Claudio claimed...").

The Court agrees with Plaintiff that the extent of Dr. Vassilopoulos' error cannot be so clearly ascertained, and the ALJ violated SSR 96-8p. *See* ECF Dkt. #18 at 4 (explaining several ways of interpreting the same report). Consequently, this report is unreliable as a whole without further clarification or amendment by Dr. Vassilopoulos. Accordingly, the Court finds that the ALJ's treatment of Dr. Vassilopoulos's opinion is not supported by substantial evidence and the ALJ failed in his duty to fully and fairly resolve the conflict in the evidence, warranting remand.

### B. STATE AGENCY OPINION EVIDENCE

Plaintiff asserts that the ALJ improperly relied, in part, on the medical opinion of state agency consultant, Dr. Christopher Leveille, Psy.D., who provided his opinion on September 25, 2014. ECF Dkt. #13 at 20; tr. at 164-69. Specifically, Plaintiff avers that Dr. Leveille's opinion was based on limited evidence because he did not consider subsequent hospitalizations and emergency room visits, the Nord Center treatment notes from 2015-2016, nor the Charak Center's

medical records from 2017. ECF Dkt. #13 at 20. Thus, Plaintiff argues that his opinion cannot serve as substantial evidence to support the ALJ's denial of disability benefits. *Id.*

Dr. Leveille is a state agency psychological consultant at the reconsideration level. Tr. at 164-69. As such, he is considered a highly qualified specialist and expert in Social Security disability evaluation. SSR 96-6p, 1996 WL 374180. The regulations require that "[u]nless the treating physician's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 416.927(e)(2)(ii)[3]. An ALJ is not required to explain why he favored one examining opinion over another as the "good reasons" rule requiring an ALJ to explain the weight afforded a treating physician's opinion does not apply. *See Kornecky v. Comm'r of Soc. Sec.,* 167 Fed.Appx. 496, 508 (6th Cir. 2006) (unpublished). In addition, ALJs are not bound by the findings of state agency psychologists, "but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p. The regulations require an ALJ to "consider" all the medical opinions in the record as well as "evaluate" them in light of the factors of 20 C.F.R. § 416.927. These factors include the examining relationship; the treatment relationship, including the length of the treatment relationship and the frequency of examination as well as the nature and extent of the treatment relationship; supportability; consistency; specialization; and other relevant factors that tend to support or contradict the medical opinion. 20 C.F.R. § 416.927(c)(1)-(6).

In the instant case, the ALJ applied the proper legal standards in addressing the agency reviewing psychologist's opinion and the weight that he gave to it. The ALJ outlined Dr. Leveille's opinion and set forth the weight that he attributed to his opinions as he indicated that he was affording it some weight. Tr. at 22. The ALJ noted Dr. Leveille found that Plaintiff had mild limitations in social functioning and moderate difficulties in maintaining concentration, persistence, or pace. *Id.* He also noted that Plaintiff was able to remember and carry out routine

---

[3] This version is effective from August 24, 2012 to March 26, 2017. Since Plaintiff's new SSI disability application date is October 25, 2013, an older version of this regulation applies.

work tasks with adequate attention, pace, and persistence for a normal workweek. *Id.* (citing tr. at 155-85). The ALJ afforded some weight to Dr. Leveille's opinion, first noting that Dr. Leveille is familiar with the rules of disability. The ALJ added that additional evidence provided at the hearing level indicates that the Plaintiff has greater social limitations, which supported a finding of greater limitations. *Id.* (citing tr. at 787-1502). The ALJ acknowledged that Dr. Leveille's opinion was consistent with and encompasses a moderate limitation in the ability to maintain attention and concentration for simple, routine, and repetitive tasks. *Id.*

Although Dr. Leveille's opinion was based on evidence pre-dating his opinion, the ALJ expressly acknowledged this limitation and accordingly afforded his opinion only some weight. Tr. at 22. Elsewhere in his decision, the ALJ considered and discussed Plaintiff's subsequent examinations and treatment notes from late 2014 onwards. *See id.* at 21-22. Contrary to Plaintiff's assertions, the ALJ discussed Plaintiff's subsequent hospitalizations from November 2014 (tr. at 21, citing tr. 1073), May 2016 (tr. at 21, citing tr. at 1120, 1423), and July and August of 2016 (tr. at 21, citing tr. at 1198, 1232, 1346-47). The ALJ also considered the Nord Center treatment notes from 2015 to 2016. *Id.* at 21 (citing to Exhibits B16F (tr. at 852-97) and B30F (1413-49)). Likewise, the ALJ considered the 2017 Charak Center records. *Id.* at 22 (citing to Exhibit B31F (tr. at 1450-68)).

The ALJ did not err in affording some weight to Dr. Leveille's early opinion because the ALJ properly considered the evidence of record that was added after Dr. Leveille rendered his opinion. *See McGrew v. Comm'r of Soc. Sec.*, 343 Fed. Appx. 26, 32 (6th Cir. 2009) (unpublished); *Turner v. Comm'r of Soc. Sec. Admin.*, No. 3:17-CV-00142, 2018 WL 3544933, at *5 (S.D. Ohio July 24, 2018), *report and recommendation adopted sub nom. Turner v. Comm'r of Soc. Sec.*, No. 3:17-CV-142, 2018 WL 4566381 (S.D. Ohio Sept. 24, 2018). Accordingly, the Court finds that the ALJ supported his findings regarding the state agency opinion evidence with substantial evidence.

### C. OPINION EVIDENCE OF THIRD PARTY WITNESSES

Plaintiff next challenges the ALJ's treatment of the statements made by Plaintiff's family members that described their observations and experiences with Plaintiff. ECF Dkt. #13 at 20.

Plaintiff avers that the ALJ made up a policy to discredit these statements when he referred to "alternative motives" and "intent to mislead." *Id.* at 21.

As to the third-party statements made by Plaintiff's family and friends, 20 C.F.R. § 416.913(d)(4) provides that "other sources" may provide evidence to show the severity of a claimant's impairment and how it impacts a claimant's ability to work. "Other sources" include non-medical sources such as spouses, parents, other caregivers, siblings, relatives, friends, neighbors, and clergy. 20 C.F.R. § 416.913(d)(4) (effective Sept. 3, 2013 to Mar. 26, 2017). SSR 06-03p[4] provides that although information from "other sources" cannot establish the existence of a medically determinable impairment, such information may provide insight into the severity of the claimant's impairment and how it affects his ability to function. SSR 06-03p, 2006 WL 2329939, at *2. ALJ should consider evidence from nonmedical sources who have not seen a claimant in a professional capacity, such as spouses, parents, friends, and neighbors, and the ALJ may consider "such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that support or refute the evidence." *Id.* at *6. The Sixth Circuit has stated that "an ALJ can consider every piece of evidence without addressing [all the evidence] in his opinion." *Kornecky v. Comm'r of Soc. Sec*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) (unpublished) (internal citation omitted).

The ALJ considered the third party statements from Elizabeth Robles, Plaintiff's niece, and Elizabeth's husband, Arthur Summers. Tr. at 23 (citing tr. at 524-27). Elizabeth Robles, the ALJ noted, wrote that Plaintiff has difficulty with household chores, understanding what people say to her, can become easily angered, is not comfortable in large groups, and that she has to monitor Plaintiff. *Id.* (citing tr. at 524-25). Further, the ALJ summarized Arthur Summers' statement that Plaintiff is not able to obtain and maintain employment because she becomes emotional very quickly and zones out when he speaks to her. *Id.* (citing tr. at 526-27).

The ALJ afforded little weight to these third party opinions, first noting that "it is imperative to consider whether a third party giving an opinion has other possible motives for

---

[4] Effective March 27, 2017, SSR 06-03p, 96-2p, and 96-5p have been rescinded by Fed. Reg. Notice Vol. 82, No. 57, page 15263. These regulations are still effective for claims filed before March 27, 2017.

11

offering the opinion." Tr. at 23. The ALJ went on to say that "[a]lthough having alternative motives does not necessarily indicate an intention to mislead, the presence of an alternative motive must be considered when assigning weight to the opinion." *Id.* The ALJ gave only little weight to these opinions "because these individuals are not disinterested parties in this proceeding, and their opinions are inconsistent with the evidence of record showing that [Plaintiff] watches [her neice's] children, babysits her grandchildren, and performs household chores." *Id.*

This Court and others have held that rejecting third party opinions because of familial bias is improper under social security regulations. *Allums v. Colvin*, No. 1:14CV2429, 2015 WL 9282334, at *21 (N.D. Ohio Nov. 25, 2015), *report and recommendation adopted*, No. 1:14 CV 2429, 2015 WL 9258507 (N.D. Ohio Dec. 17, 2015) (Limbert, MJ) (finding ALJ's reason for discounting statements of plaintiff's friends and relatives solely because they were made by people who were biased in Plaintiff's favor insufficient); *Stepp v. Comm'r of Soc. Sec. Admin.*, No. 2:18-CV-00641, 2019 WL 3369147, at *6-7 (S.D. Ohio July 26, 2019), *report and recommendation adopted*, No. 2:18-CV-641, 2019 WL 3804706 (S.D. Ohio Aug. 13, 2019). Social security regulations and rulings specifically allow for the consideration of familial third party statements to show the severity of a claimant's impairments and the impact of the severity of those impairments upon a claimant's ability to work. *See Teel v. Comm'r of Soc. Sec.*, No. 1:10CV613, 2011 WL 6256952, at *20 n.5 (S.D.Ohio Aug. 22, 2011). Rejecting such statements because of undue bias would render the social security rulings and regulations allowing such statements superfluous. 20 C.F.R. § 416.913(d) (expressly listing "other relatives" as appropriate sources who can provide information about an individual's functioning); SSR 06-03p (same).

The ALJ added that the third party statements were inconsistent with Plaintiff's activities of daily living, specifically, evidence showing Plaintiff babysits her niece's children and Plaintiff's grandchildren and Plaintiff performs household chores. Tr. at 23. Nonetheless, these activities of daily living were not entirely inconsistent with the record. Upon closer inspection, neither Plaintiff's niece nor her niece's husband indicated that Plaintiff had difficulty babysitting children. *See id.* at 524-27. The only potential inconsistency is regarding Plaintiff's ability to do

12

household chores. Only Plaintiff's niece discussed chores, stating that Plaintiff is forgetful when it comes to preparing meals and turning off the stove. *See* tr. at 524-25. But having difficulty in performing household chores does not necessarily mean that Plaintiff was completely unable to do any household chores, as the ALJ seems to imply. *Id.* at 23. The records cited by Defendant support the proposition that Plaintiff was capable and did indeed perform household chores but sometimes had difficulty in doing so, albeit for physical, rather than mental, reasons. *See* ECF Dkt. #16 at 7 [citing tr. at 114, 471 (Plaintiff reported on 2/11/14 that she helps with cooking and housework but did not take care of children or grandchildren at that time), 870 (Plaintiff reported she was live-in babysitter for niece but was stressed and planned to move out), 873 (Plaintiff watched over her grandchildren for a week while her daughter's husband was in the hospital), 1464 (Plaintiff reported on 11/30/17 that she lives with her son who is depressed and has not left his room in 2 years; has to take care of everything but cannot take care of the house or cook some days due to pain)]; *see also* tr. at 115 (Plaintiff testified that she had physical difficulty doing dishes).

As previously noted, even if an ALJ's decision is supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a plaintiff on the merits or deprives the plaintiff of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). Here, the ALJ appears to have relied primarily on the fact that Plaintiff's niece and her husband were "not disinterested parties," which is contrary to SSA regulations. Although the second reason provided by the ALJ is weak, it may have been sufficient to constitute harmless error. However, given that this Court is remanding the instant matter due to a separate error, the Court remands on this issue for the ALJ to reconsider the third party statements of Elizabeth Robles and Arthur Summers.

### D. TREATMENT OF GAF SCORES

Plaintiff's final assignment of error is that the ALJ erred in his assessment of Plaintiff's Global Assessment Functioning ("GAF") scores. A GAF score represents a clinician's subjective judgment of a claimant's overall level of psychological, social, and occupational functioning.

13

*White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009); *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 503 n.7 (6th Cir. 2006). GAF scores are measured on a scale of 0 to 100, with lower scores representing more severe mental limitations. *White*, 572 F.3d at 276. A GAF rating of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Kornecky*, 167 Fed. Appx. at 503.

The Sixth Circuit has acknowledged that GAF scores may be helpful in determining RFC, but adjudicators are not required to reference or even consider them. *See Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 508 (6th Cir. 2013) (unpublished) ("[N]o particular amount of weight is required to be placed on a GAF score.") (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir.2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.")); *Keeler v. Comm'r of Soc. Sec.*, 511 Fed. Appx. 472, 474 (6th Cir. 2013) (unpublished) ("[T]he ALJ was not required to consider Keeler's GAF scores..."). In fact, an ALJ's "failure to reference a GAF score is not, standing alone, sufficient grounds to reverse a disability determination." *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. Appx. 411, 415 (6th Cir. 2006) (citing *Howard*, 276 F.3d at 241).

Plaintiff's record contained about 23 GAF scores from dates between January 22, 2013 to May 4, 2016. ECF Dkt. #13 at 12-13. Her scores were, chronologically, 55, 85, 50, 50, 50, 50, 45, 50, 50, 50, 50, 45, 50, 45, 55, 60, 48, 35, 49, 49, 50, 29, and 48. *Id.*; *see* tr. at 23. The ALJ considered Plaintiff's GAF scores, acknowledging that they indicated minimal symptoms to behavior that is considerably influenced by delusions or hallucinations. Tr. at 23. However, the ALJ further concluded that GAF scores are a snapshot of what the Plaintiff's level of functioning was at a particular time and they are not an indication of overall functioning. *Id.* Accordingly, the ALJ afforded some weight to the GAF scores, but stated that he relied on evidence that demonstrated Plaintiff's overall ability to function. *Id.* In addition, the ALJ noted that her lower GAF scores were provided when Plaintiff was hospitalized. *Id.* Finally, the ALJ acknowledged that GAF scores are not intended for forensic purposes, such as assessment of disability,

competency, or the individual's control over such behavior. *Id.* (citing Diagnostic and Statistical Manual of Mental Disorders, Fourth Ed., pp. xxiii and xxvii).

Although not required, the ALJ considered and even afforded some weight to these scores. Tr. at 23. The Court finds that the ALJ committed no error with regard to his treatment of Plaintiff's GAF scores and supported his finding with substantial evidence.

## VI. CONCLUSION AND RECOMMENDATION

For the reasons described above, the Court finds that the ALJ's treatment of Dr. Vassilopoulos' opinion is not supported by substantial evidence and the ALJ failed in his duty to fully and fairly resolve the conflict in the evidence, warranting remand. In addition, the Court remands for the ALJ to reconsider the third party statements of Plaintiff's niece and her niece's husband.

Accordingly, the Court REVERSES the decision of the ALJ and REMANDS Plaintiff's case for further proceedings consistent with this opinion. On remand, this matter shall not be referred to ALJ William LeLand. "A fresh set of eyes is appropriate." *See Blanton v. Comm'r of Soc. Sec.*, No. 3:18 CV 1761, 2019 WL 4141844, at *1 (N.D. Ohio Aug. 30, 2019) (slip copy) (citing *Lucia v. SEC*, 138 S. Ct. 2044, 2055 (2018) (ordering that different ALJ adjudicate claim on remand); *Burgoyne v. Comm'r of Soc. Sec.*, 2010 WL 955884, at *4 (E.D. Mich. 2010) (same)).

Case reversed and remanded under 42 U.S.C. § 405(g) (sentence four).

IT IS SO ORDERED.

Date: March 12, 2020  */s/George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE